# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON CISNEROS,<br><br>    Petitioner,<br><br>    v.<br><br>J. LIZARRAGA,<br><br>    Respondent. | Case No. 1:17-cv-00402-AWI-SAB-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.**

**BACKGROUND**

On June 12, 2013, Petitioner was convicted after a jury trial in the Madera County Superior Court of: lewd and lascivious acts on a child under the age of fourteen (counts 1, 5); lewd and lascivious acts on a child under the age of fourteen with force, violence, menace, or fear of immediate and unlawful bodily injury (counts 2, 3); and attempted digital penetration (lesser included offense of count 4). (CT[1] 142–47). On January 10, 2014, Petitioner was sentenced to a total determinate term of sixteen years on counts 1 and 3. The trial court imposed consecutive indeterminate terms of fifteen years to life on counts 2 and 5. The sentence on count

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on May 16, 2017. (ECF No. 12).

1

4 was stayed. People v. Cisneros, No. F068718, 2015 WL 5842400, at *3 (Cal. Ct. App. Oct. 7, 2015). On October 7, 2015, the California Court of Appeal, Fifth Appellate District affirmed the judgment. Id. at *5. On January 13, 2016, the California Supreme Court denied Petitioner's petition for review. (LDs[2] 5, 6).

On March 20, 2017, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent has filed an answer, and Petitioner has filed a traverse. (ECF Nos. 11, 16).

## II.

## STATEMENT OF FACTS[3]

An amended information charged Cisneros in count 1 with committing a lewd and lascivious act on Jane Doe 1, a child under the age of 14 years, in 2006; counts 2 and 3 charged Cisneros with committing a lewd and lascivious act on Jane Doe 1 by use of force, violence, or duress between November 2009 and November 2010; count 4 charged that between September 2007 and September 2008 Cisneros digitally penetrated Jane Doe 2, a child aged 10 or under, when he was over 18 years; and count 5 charged Cisneros with committing a lewd and lascivious act on Jane Doe 2, a child under the age of 14 years, between September 2007 and September 2008. It was further alleged as to counts 1, 2, 3, and 5 that Cisneros was convicted in the present case of committing an offense specified in Penal Code section 667.61, subdivision (c) against more than one victim.

On May 28, 2013, a jury trial commenced. O.H. testified that she is part of a large family; she has two sisters and one brother. Her youngest sister is married to Cisneros. Members of the extended family often gathered together for birthdays, holidays, and to enjoy barbeques together. Her brother is the father of Jane Doe 1; her oldest sister is the mother of Jane Doe 3; and O. is the mother of Jane Doe 2.

Between 2004 and 2005, Cisneros and his wife lived in his wife's parents' home. O. and her two children also were living in the home. O.'s parents were ill, and O. and her siblings would take turns living with and caring for their parents. Family gatherings usually were held at O.'s parents' house. After O.'s parents died, the gatherings usually were at the Cisneros house.

***Jane Doe 1***
Jane Doe 1 was a freshman in high school at the time of Cisneros's trial. One time when she was in the third grade, she was at her grandparents' house doing her homework at the kitchen table; Cisneros was in the living room. She called to her mother to come help her with some homework. Her mother did not respond, but Cisneros offered to help. Jane Doe 1 walked over and sat next to Cisneros on the couch. Jane Doe 1 was wearing shorts at the time. When she sat down next to Cisneros, he began rubbing the inner thigh of her left leg with his hand. Cisneros's hand went up her leg toward her crotch; his thumb went under her

---
[2] "LD" refers to the documents lodged by Respondent on May 16, 2017. (ECF No. 12).
[3] The Court relies on the California Court of Appeal's October 7, 2015 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

shorts and he was moving it against her thigh in a circular motion. She got up and walked back to the kitchen table because it was "not a good feeling."[4]

On another occasion that occurred in 2008, the family had gathered for a birthday party. When the children came inside after playing, Cisneros offered candy to all the children except Jane Doe 1. When Jane Doe 1 asked for candy, Cisneros put his arms around her shoulder and walked her into his bedroom.

In the bedroom, Cisneros sat Jane Doe 1 on his lap and started rubbing her leg. He started squeezing her to make sure she did not leave; she asked him to stop. Cisneros mumbled something and started rubbing Jane Doe 1's "private area." She got up to leave, but Cisneros pulled her back and leaned her over the bed. He then put his hands down her shirt and touched her breasts underneath her bra. She did not tell anyone because she was afraid she would get into trouble.

*Jane Doe 2*
At the time of trial, Jane Doe 2 was in the eighth grade. She estimated she was about eight years old when Cisneros molested her. At the time, she was living with her mother and others in the Cisneros home.

After a birthday party, everyone had gone to the store except Jane Doe 2 and Cisneros. Jane Doe 2 was in her bedroom watching television when Cisneros called her into his bedroom. Cisneros was seated in a chair, stated he had some candy for her, and asked her to come stand next to him. After she was standing next to him, Cisneros reached out and touched her on her stomach. He then unzipped her pants and reached inside her pants with his hand, touching her vaginal area and moving his fingers around. Jane Doe 2 felt uncomfortable and scared. She thought about telling her mother about the incident, but was afraid to do so.

*Jane Doe 3*
Jane Doe 3 was 27 years old at the time of trial. She testified to uncharged acts pursuant to section 1108. When she was eight or nine, she was spending the night at her grandparents' home. Cisneros, her uncle, was living there at the time. Jane Doe 3 was sleeping on the floor in the living room one night when she awoke to find Cisneros hovering over her with his hand in her underpants. It felt like his fingers were rubbing her vagina. She pretended to be asleep and waited for him to stop. She did not tell anyone about the incident until about a year prior to Cisneros's trial.

Sometime after high school, when she was 17 or 18 years old, Jane Doe 3 went to visit her grandmother. While lying on her stomach in a bedroom, Cisneros came in and rubbed her back up and down over her clothing. She had not asked him to do this. Cisneros asked if everything was all right and she said she was fine. The incident did not last very long, but she was afraid something "like that" was going to happen again.

*Defense Case*
Cisneros's daughter and two nieces related to him by blood, all in their late 30's or early 40's at the time of trial, testified that Cisneros never touched them inappropriately.

---

[4] Jane Doe 1 first said Cisneros's thumb was "[u]nder" her shorts; then she said his thumb was "[j]ust barely" under her shorts. Later, the prosecutor asked Jane Doe 1, "do you mean like inside your shorts" or "lower on your leg?" Jane Doe 1 replied, "Lower on my leg."

3

> A family friend testified she met Cisneros through his sons; she never saw Cisneros act inappropriately with her five-year-old daughter when they lived in the Cisneros home. A niece of Cisneros's first wife testified Cisneros never touched her in an inappropriate manner.

Cisneros, 2015 WL 5842400, at *1–2 (footnote in original).

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged convictions arise out of the Madera County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70–71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this

Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While

the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

## IV.

## REVIEW OF CLAIM

In his sole claim for relief, Petitioner asserts that the trial court erroneously admitted evidence of his prior uncharged sexual offense, in violation of due process. (ECF No. 1 at 14–15). In the answer, Respondent argues that the state court's denial of Petitioner's claim is entitled to deference under AEDPA. (ECF No. 11 at 7). This claim was presented on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim also was raised in the petition for review, which the California Supreme Court summarily denied. (LDs 5, 6). The Court presumes that the California Supreme court adjudicated the claim on the merits. See Richter, 562 U.S. at 99. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 568 U.S. 289, 297 n.1 (2013); Ylst, 501 U.S. at 806.

In finding that the trial court did not prejudicially err in admitting evidence of Petitioner's prior sexual offense, the California Court of Appeal stated:

> Cisneros's sole contention on appeal is that the trial court erred prejudicially when it admitted evidence of the uncharged sex offenses involving Jane Doe 3.
>
> *Factual Summary*
> Before trial the People filed a motion to admit evidence of uncharged sexual offenses involving Jane Doe 3 pursuant to section 1108. Cisneros filed an opposition to the motion, asserting the evidence should be excluded pursuant to section 352 because it was remote in time and had no probative value as it occurred on one occasion in 1993 or 1994.

On May 28, 2013, the trial court held a hearing on the People's motion to admit section 1108 evidence. Cisneros argued that in addition to the section 352 argument raised in his opposition, allowing the testimony of Jane Doe 3 would create a "mini trial," with no ability to present a defense because of the lapse of time. The People argued that Jane Doe 3 had suffered inappropriate touching by Cisneros on two occasions, once in 1993 and once in 2003.

The trial court noted that the information alleged charges back to 2004, and the trial court opined that the Jane Doe 3 offenses, therefore, were "not too remote." The trial court also noted that "any evidence under 1108 is prejudicial." The proposed evidence, moreover, was not "overly prejudicial or substantially prejudicial in comparison to the probative effect." Further, the proposed evidence was "similar type of conduct" to the charged offenses and there was only one witness who would be testifying. The trial court concluded that section 352 did not preclude admission of the proposed section 1108 evidence and ruled that the evidence would be allowed.

*Analysis*

An appellate court applies the abuse of discretion standard to a trial court's decision to admit section 1108 evidence. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125; *People v. Wesson* (2006) 138 Cal.App.4th 959, 969.) " 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286.)

The alleged acts committed against Jane Doe 3 and the charged offenses against Jane Does 1 and 2 are all offenses that fall within the express language of section 1108, subdivision (d)(1)(A). Therefore, the alleged sexual offenses against Jane Doe 3 are "indisputably relevant." (*People v. Branch* (2001) 91 Cal.App.4th 274, 282–283 (*Branch*).)

We find nothing arbitrary, capricious, or patently absurd about the trial court's decision to admit testimony from Jane Doe 3. The trial court conducted a section 352 hearing on May 28, 2013, before ruling on the admissibility of the section 1108 evidence. The trial court weighed the probative value against the various factors to be considered in determining admissibility: (1) the nature of the uncharged conduct; (2) remoteness in time; (3) the possibility of confusion of the issues; and (4) the amount of time to present the uncharged offense evidence. (*Branch, supra,* 91 Cal.App.4th at p. 282.)

The trial court noted that the last alleged act against Jane Doe 3 occurred in 2003, and the charged offenses against Cisneros included charges dating from 2004. The trial court concluded the section 1108 evidence, therefore, was not remote. "No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible." (*Branch, supra,* 91 Cal.App.4th at p. 284.) Time gaps of up to 30 years between the charged offenses and the section 1108 offenses have been found not so remote as to preclude admission of the section 1108 evidence. (*Branch,* at pp. 284–285.)

The trial court also weighed the nature of the uncharged conduct, finding it was similar in nature to the charged conduct. All three victims were about eight or nine years old when Cisneros first sexually abused them. All of the offenses occurred where Cisneros was living. With all three victims, Cisneros rubbed or

8

touched their vaginas with his hand. All three victims were nieces of his wife and Cisneros took advantage of a position of trust as their uncle. The trial court's conclusion that the uncharged offenses were similar to the charged offenses was supported by substantial evidence.

Additionally, the trial court considered the amount of time to present the evidence, with the trial court noting only one witness would be testifying. Jane Doe 3's testimony was a small portion of the trial. It covered only 25 pages of the reporter's transcript, which was over 2,000 pages.

Cisneros, however, contends the section 1108 evidence was unduly prejudicial and confused the issues because he never was charged or convicted of offenses relating to Jane Doe 3. As for confusion of the issues, there is nothing in the record to indicate the jury was confused by Jane Doe 3's testimony. (*Branch, supra,* 91 Cal.App.4th at p. 284.) The jury requested a readback of Jane Does 1 and 2's testimony; no readback of Jane Doe 3's testimony was requested.

Regarding undue prejudicial effect, the trial court concluded the jury would not be "overly prejudiced by the conduct," and the section 1108 evidence was not "overly prejudicial ... in comparison to the probative effect." As for the claim of undue prejudice by Cisneros, he cites to *People v. Harris* (1998) 60 Cal.App.4th 727 (*Harris*) in support of this contention. *Harris,* however, does not support Cisneros's contention.

In *Harris,* the appellate court held the propensity evidence should not have been admitted because the conduct was too dissimilar from the conduct at issue. The section 1108 evidence at issue in the *Harris* case was the forcible and violent rape of a stranger; the charged offenses in the case involved sexual offenses against acquaintances, who, because of their mental health conditions, put up no or little resistance. (*Harris, supra,* 60 Cal.App.4th at p. 738.) Here, as the trial court correctly concluded, the offenses testified to by Jane Doe 3 were substantially similar to the charged offenses committed against Jane Does 2 and 3.

As for Cisneros's claim that the section 1108 evidence was unduly prejudicial because he was not charged or convicted of any offense against Jane Doe 3, any such potential impact was eliminated by the jury instructions, where the jurors were instructed with CALCRIM No. 303, limited purpose evidence and also with a pinpoint instruction on uncharged acts, CALCRIM No. 1191. We presume the jury followed these instructions, as there is no indication to the contrary in the record. (*People v. Prince* (2007) 40 Cal.4th 1179, 1295.)

Cisneros, 2015 WL 5842400, at *3–4.

Admission of evidence is an issue of state law, and errors of state law do not warrant federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The pertinent question on habeas review is whether the state proceedings satisfied due process and "[t]he admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." Holley v. Yarborough, 568

9

F.3d 1091, 1101 (9th Cir. 2009) (quoting Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995)).

This Court is bound by the Ninth Circuit's decision in Holley. Although circuit caselaw is not governing law under AEDPA, the Court must follow Ninth Circuit precedent that has determined what federal law is clearly established. Byrd v. Lewis, 566 F.3d 855, 860 n.5 (9th Cir. 2009). Further, Ninth Circuit "precedents may be pertinent to the extent that they illuminate the meaning and application of Supreme Court precedents." Campbell v. Rice, 408 F.3d 1166, 1170 (9th Cir. 2005) (en banc). The petitioner in Holley was charged with multiple felony counts of lewd and lascivious acts on a child under fourteen and challenged the trial court's admission of a lewd matchbook and several sexually explicit magazines seized from the petitioner's bedroom. Holley, 568 F.3d at 1096. The Ninth Circuit denied habeas relief because the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ [of habeas corpus]." Id. at 1101. "Absent such 'clearly established Federal law,'" the Holley court could not "conclude that the state court's ruling was an 'unreasonable application.'" Id. (quoting Carey v. Musladin, 549 U.S. 70, 77 (2006)).

The facts of the instant case are indistinguishable from Holley and do not warrant a different result. Because there is no Supreme Court holding that establishes the fundamental unfairness of admitting prejudicial evidence, the California Court of Appeal's denial was not contrary to, or an unreasonable application of, clearly established federal law. The Court must defer to the state court's decision. Accordingly, Petitioner is not entitled to habeas relief on his sole claim, and the petition should be denied.

## V.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within

**THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **September 20, 2017**

UNITED STATES MAGISTRATE JUDGE